**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11-cr-00077-PPS |
| | ) | |
| JUAN BRISEÑO | ) | |

## OPINION AND ORDER

The government filed a motion *in limine* seeking to admit a hearsay statement at trial under the excited utterance exception to the rule against hearsay. (Docket Entry 1222.) Voir dire is set to begin on January 12, 2015, with the guilt phase of the capital trial to begin once the jury is selected. Juan Briseño is charged with committing six homicides in aid of the Imperial Gangsters racketeering enterprise. The 2010 murder of Miguel Colon is one of the six homicides.

The government's motion explains that the night of the murder Briseño and alleged fellow gang members heard that Colon, a rival gang member, was at a party. Briseño and three associates drove to the area of the party to wait for Colon. Colon eventually came out, walked to his car, and drove back to the area of the party to pick up his friend Corey Walton. The driver of the car carrying Briseño recognized Colon and drove up next to Colon's car, and Briseño began firing. It was during this first round of shooting, done by Briseño, that the government alleges Colon was fatally wounded. After that, Colon and someone else shot back at the car carrying Briseño, and then another of the Briseño car's occupants joined Briseño in shooting.

The government explains that "Subject 40 " will testify he was at the party, and ran out "almost immediately" after Colon was shot, where he encountered Colon's friend Corey Walton. Walton was holding the mortally wounded Colon. Subject 40 will testify that he asked Walton what happened, and Walton, in an excited and emotional state, told Subject 40 that "Tito" (Juan Briseño ) had shot Colon. Subject 40's testimony repeating Walton's statement would be hearsay.

Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. Federal Rule of Evidence 802 is the Rule Against Hearsay, and it states that hearsay is inadmissible unless a specific exclusion or exception applies by statute or rule. An exception to the rule is made for an excited utterance, a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). With respect to timing, the statement need not be made contemporaneous with the startling event, but must be made while the speaker feels the excitement caused by the event. The idea "is that 'circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.'" *United States v. Boyce*, 742 F.3d 792, 798, 796 (7th Cir. 2014) (quoting Fed. R. Evid. 803 advisory committee's note).

The Seventh Circuit has questioned the reasoning underlying the excited utterance exception (people can lie quickly, even in highly emotional states), but has nevertheless "recognized that despite these issues, the [spontaneity] exceptions[, of which excited utterance is one,] are well-established." *Boyce*, 742 F.3d at 796 (citing *Ferrier v. Duckworth*, 902 F.2d 545, 547-48 (7th Cir. 1990); supplementarily citing *White v. Illinois*, 502 U.S. 346, 356 n.8 (1992)).

So, accepting that a hearsay statement may be admitted as evidence if it was an excited utterance, I turn to the question of whether Walton's statement to Subject 40 qualifies as such an utterance. Walton was holding the gunshot, mortally wounded Colon when he made the statement. Subject 40 ran out of the party "almost immediately" after the gunfight, which means Walton was present even more immediately after the gunfight, if not during it (the government's filing isn't entirely clear – it leaves some work to inference, but I'm not taking those leaps here). Even if Walton wasn't in the middle of the flying bullets, he was there moments later holding a bleeding Colon. The shooting was the startling event, and the statement, in identifying the shooter, related to that event. This is exactly the kind of circumstance that case law indicates the excited utterance exception contemplates. *See, e.g.*, *Boyce*, 742 F.3d at 798 (holding 911 call "just" after domestic battery reporting battery and assailant's gun possession qualified as excited utterance); *Webb v. Lane*, 922 F.2d 390, 393-94 (7th Cir.

1991) (holding that shooting victim's statements (1) identifying his shooter in response to a police officer's question "Do you know who shot you?" while lying in an alley a few minutes after being shot, and (2) again identifying his shooter in response to an inquiry after being put in an ambulance, were properly admitted at trial as excited utterances). Subject 40 will therefore be permitted to testify about Walton's statement during trial, under the circumstances the government has lain out.

As a final note, I point out that the government's motion doesn't make clear the basis for Walton's knowledge. If it turns out Walton's accusation against Briseño was the repetition of a statement Colon (or someone else) made to him, then Walton's statement to Subject 40 was double hearsay, or hearsay within hearsay, and the government will need to establish a hearsay exception for each layer of hearsay. Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Both layers may be excepted under the same basis, including excited utterance.

SO ORDERED.

ENTERED: December 30, 2014

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT