UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:11CR77 PPS |
| ) | |
| JUAN BRISENO, ) | |
| ) | |
| Defendant. ) | |

<u>MEMORANDUM OPINION</u>

Trial in this matter is set to begin Monday, January 12, 2015. The prospective jurors have completed a lengthy juror questionnaire, and based on those questionnaires, several jurors were struck for cause after a lengthy hearing. Approximately 250 jurors remain in the venire. I have previously described my intention of bringing 24 prospective jurors to court each day for a communal general voir dire followed by individual voir dire chiefly for purposes of death qualification, during which counsel will be permitted to pose questions to individual venire members. The purpose of this Memorandum Opinion is to give the parties some guidance on what I believe to be the proper scope of that individual questioning.

Defendant Briseno's counsel long ago filed a "Motion to Permit Attorney Conducted Voir Dire, etc." [DE 611]. Given the structure I have outlined for the conduct of in-person voir dire, I obviously intend to allow counsel to pose appropriate questions to prospective jurors to explore their attitudes about the death penalty, and so to that extent, the motion will be granted.

Questions undoubtedly arise as to what questions are appropriate, and which are not. Briseno's motion contains a lengthy memorandum on principles applicable to the death penalty and the results of social science research concerning capital juries, much of which seems better directed to the formulation of jury instructions than to my decisions about what is permissible in jury selection. The motion isn't particularly specific about the sorts of questions counsel wish to ask. But both parties agree, and I am well aware, that the death qualification standard only warrants disqualification of a juror for cause whose views on the subject would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas*, 448 U.S. 38, 45 (1980). Likewise, there is agreement to the corollary principle that a prospective juror who would categorically *always* impose, or categorically *never* impose, a sentence of death on a defendant convicted of a capital crime is properly struck for cause as someone who could not give proper consideration to the role of aggravating or mitigating factors. *Morgan v. Illinois*, 504 U.S. 719, 728-29 (1992).

Without citing to any supportive authority, Briseno's motion suggests that counsel should be "permitted to probe juror attitudes about the significant facts in the specific case." [DE 611-1 at 11.] In his much more recently filed "Defendant's Proposed Jury-Selection Procedures and Memorandum of Law Regarding Capital Voir Dire," Briseno argues for such questioning by reliance on a number of Supreme Court cases requiring that capital juries be able to give meaningful consideration and effect to

mitigating evidence. [DE 1174 at 10-12, citing *Abdul-Kabir v. Quartermain*, 550 U.S. 233, 246 (2007); *Smith v. Texas*, 543 U.S. 37, 46 (2004); *Tennard v. Dretke*, 542 U.S. 274, 284 (2004); *Penry v. Johnson*, 532 U.S. 782, 797 (2001) (*Penry II*); *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989).]

But these cases are directed to issues of jury instruction, not jury selection, and in my view don't support the sort of "stake-out" questions Briseno wants to pose and which I find inappropriate. In a case such as this, with so many alleged homicides, attempted homicides and other expansive and grim allegations about drug trafficking and the violent gang lifestyle, skillful counsel could potentially employ such questions (if permitted) to make the seating of a petit jury nearly impossible.

Instead, I am persuaded by the reasoning of the Tenth Circuit in *United States v. McVeigh*, where the court considered the appropriateness of questions asking a potential juror in effect "how she would vote on the evidence presented at trial." 153 F.3d 1166, 1207 (10th Cir. 1998). Questions that ask a juror's predisposition "predicated on facts specific to the case at issue or upon speculation as to what facts may or may not be proven at trial" are impermissible because they "improperly call[] for speculation and [seek] a precommitment from the juror." *Id*. I will not allow those sorts of questions in voir dire.

This is true with respect to aggravating and mitigating sentencing factors, just as it is with presumed facts to be proved at the guilt phase of the trial. I agree with *McVeigh* that death qualification is properly "designed to illuminate a juror's basic

beliefs 'regardless of the facts and circumstances of conviction'" and "not to allow defendants to pre-determine jurors' views of the appropriate punishment for the particular crime charged." *Id*. at 1208, quoting *Morgan*, 504 U.S. at 735. Therefore, I will not permit voir dire questions attempting to elicit a prospective juror's analysis of the persuasive value of particular aggravating or mitigating factors, and their likely impact on his or her vote for or against the death penalty.

The juror comprehensive questionnaire jointly devised by the parties posed 14 probing questions concerning capital punishment. As a result, before laying eyes on the venire members, counsel and I have significant information on each individual's attitudes about the death penalty and its potential imposition in this case. The in-person death qualification voir dire will provide an opportunity for us to clarify ambiguous or conflicting responses in an individual's questionnaire, and further explore what *McVeigh* calls "the jurors' core value system regarding imposition of the death penalty." 153 F.3d at 1208. Questions "regarding how a juror would vote during the penalty phase if presented with specific mitigating (or aggravating) factors" or other case-specific circumstances will not be allowed. *Id*. (parenthetical added).

One topic potentially appropriate for exploration on voir dire is identified in Briseno's motion. Briseno correctly observes that, as the Supreme Court has held, "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." *Turner v. Murray*, 476 U.S. 28, 36-37 (1986), cited at DE 611-1 at 6. I don't believe the record to-

date discloses or establishes the race of each of the murder victims (or attempted murder victims) involved in the charges against Briseno. But if defense counsel wish to make a record on the subject and invoke Briseno's entitlement to inquire into prospective jurors' racial bias, they will be permitted to do so.

"No hard-and-fast formula dictates the necessary depth or breadth of *voir dire*...Jury selection, we have repeatedly emphasized, is 'particularly within the province of the trial judge.'" *Skilling v. United States*, 561 U.S. 358, 386 (2010). "Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." *United States v. Wood*, 299 U.S. 123, 145-46 (1936). "Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).

In attempting to judge the impartiality of the venire members, I am mindful that "unmistakable clarity" as to unacceptably biased views of a particular juror may not always be expected and cannot be required.

> [D]eterminations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made 'unmistakably clear'; these veniremen may not know how they will react when faced with imposing the death

5

sentence, or may be unable to articulate, or may wish to hide their true feelings.

*Wainwright v. Witt*, 469 U.S. 412, 424-25 (1985). I will ultimately be guided by the applicable standards "imbued with a fair amount of common sense" and, based on "the questioning as a whole" rather than particular questions and answers, make strikes for cause where the record leaves me "with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Id.* at 435, 426.

ACCORDINGLY:

Defendant Briseno's Motion to Permit Attorney Conducted Voir Dire Pursuant to Principles Required by *Furman v. Georgia* and Its Progeny [DE 611] is GRANTED IN PART and DENIED IN PART, as indicated in the memorandum of this opinion.

SO ORDERED.

ENTERED: January 5, 2015.

    /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT