**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11-cr-00077-PPS |
| | ) | |
| JUAN BRISEÑO | ) | |

## OPINION AND ORDER

The government seeks the death penalty against defendant Juan Briseño having

filed a notice of intent to seek it pursuant to 28 U.S.C. § 3593(a) (the "NOI"), which was

later supplemented. (Docket Entries 503, 968, 995). Presently before me is the

defendant's Motion to Strike the Notice. (DE 1027.) I held a hearing on Briseño's motion,

and after carefully considering the briefing and arguments presented to me, I will grant

in part and deny in part the motion.

## BACKGROUND

The Fourth Superseding Indictment alleges that Briseño was a member of the

Almighty Imperial Gangsters (the "IGs"), an organized street gang. The gang is alleged

to have been a racketeering enterprise consisting of many members who conspired to

commit (and did in fact commit) various criminal acts in furtherance of the enterprise

including murders, attempted murders, robberies, batteries, and widespread drug

dealing. The IGs were active in Northwest Indiana from at least February 2002 through

the date of the Superseding Indictment (DE 652) in September 2013. They had various

gang identifiers, including hand gestures, gang words, symbols and colors. The government alleges that the IGs were strongly hierarchical, and had various gang rules the violation of which could be met with harsh disciplinary measures. One of the alleged gang rules was obeying "shoot-on-sight" or "kill-on-sight" orders issued against rival gang members and IGs suspected of cooperating with law enforcement.

The Indictment details the alleged manner and means of the conspiracy. It also lists many overt acts that the government alleges were committed in furtherance of the conspiracy. The government has also filed a series of documents explaining the enterprise allegations against Briseño. (DE 732, 1066, 1198.) These filings list additional, uncharged overt acts of which the government intends to offer evidence in support of the criminal enterprise conspiracy charge.

In addition to the racketeering conspiracy charge, Briseño is charged with six murders, seven attempted murders (*see* DE 1062 at 26), and trafficking cocaine and marijuana. Each of the murders is charged under 18 U.S.C. § 1959(a)(1) — the federal criminal code section that outlaws murder in aid of racketeering. (*See* DE 652).

Briseño was charged along with more than 20 co-conspirators, all but one of whom have pleaded guilty; Richard Reyes went to trial early in 2014 and was convicted of murder, among other charges. Briseño was the only defendant against whom the

government sought the death penalty. No other defendant came close to Briseño's alleged six murders and seven attempts.

The Grand Jury also made the special findings required for the government to seek the death penalty for each of the murders charged against Briseño under the Federal Death Penalty Act of 1994 ("FDPA"). Before the government can lawfully seek the death penalty in a given case, the grand jury must find that the defendant had at least one of four possible gateway, or threshold, intents in committing the acts that led to death, 18 U.S.C. § 3591(a)(2)(A)-(D), and that at least one statutory aggravating factor was present, 18 U.S.C. § 3592(c)(5), (9), (16). A finding of at least one gateway intent and one statutory aggravator is said to render a defendant "death eligible." The phrase "death eligible" is, in my opinion, a rather unfortunate one, and by using it I don't mean to be flippant. That's the nomenclature that has arisen in this area of law and, for that reason alone, I will use it as well. *See, e.g., Tuilaepa v. Cal.*, 512 U.S. 967, 971-72 (1994).

For each of the six murders charged against Briseño, the Indictment finds all four forms of intent and at least one statutory aggravating factor. The statutory aggravating factor common to all six murder charges is that the offense was committed after substantial planning and premeditation to cause the death of a person. 18 U.S.C. § 3592(c)(9). Briseño's motion challenges this aggravating factor, and seeks particulars about its application to each of the murder counts. Some of the murder charges list

3

additional aggravating factors: in the commission of the offense, or in escaping apprehension for it, the defendant knowingly created a grave risk of death to one or more people apart from the murder victim, 18 U.S.C. § 3592(c)(5); and the defendant intentionally killed or attempted to kill more than one person in a single criminal episode, 18 U.S.C. § 3592(c)(16). These other two statutory aggravators aren't challenged in the current motion, so I won't address them in this Order.

Apart from the Indictment, before it can lawfully seek the death penalty, the government must give notice to the defendant of all of the aggravating factors of which the government intends to present evidence. 18 U.S.C. § 3593(a). The government does this by filing an NOI. The NOI in this case lists all four possible gateway intents for each of the six charged murders. The NOI also lists both the statutory aggravating factors for each murder listed in the Indictment, and additional non-statutory aggravating factors. The alleged non-statutory aggravating factors are the same for each of the six murders. Here they are:

1. Briseño is a continuing danger to the lives and safety of other and is likely to commit criminal acts of violence in the future as evidenced by:

   a. A low potential for rehabilitation as demonstrated by repeated violent criminal acts;

   b. A willingness to take human life and a lack of remorse for his acts of violence as demonstrated by statements he made following these acts;

      c.      His stated desire to impose a rule requiring fellow members of the IGs to shoot at rivals on sight;

2.      Briseño faces contemporaneous convictions for other criminal activity, including other murders and attempted murders;

3.      Briseño demonstrated an allegiance to and active membership in the IG street gang;

4.      Briseño caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of the victim's death upon his family and friends.

Briseño challenges the non-statutory aggravators of victim impact and future dangerousness, as well as the lack of remorse sub-factor.

If, at trial, the jury finds Briseño guilty of a death-eligible charge then there must be a separate sentencing hearing, or penalty phase of trial. During the sentencing the jury hears evidence of mitigating factors and aggravating factors (both statutory and non-statutory) and determines whether the aggravating factors sufficiently outweigh the mitigating factors to justify a sentence of death. 18 U.S.C. § 3593. The FDPA offers some possible mitigating factors, but the list begins by saying that "the finder of fact shall consider any mitigating factor" and the last listed factor is called "other factors," so the defense has broad latitude with mitigators. 18 U.S.C. § 3592(a). The FDPA also lists 16 statutory aggravating factors, and says that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). The FDPA doesn't list non-statutory factors (hence the name "non-statutory"), but it

references them, naming victim impact in particular: "The factors for which notice is

provided under this subsection may include factors concerning the effect of the offense

on the victim and the victim's family, and may include oral testimony, a victim impact

statement that identifies the victim of the offense and the extent and scope of the injury

and loss suffered by the victim and the victim's family, and any other relevant

information." 18 U.S.C. § 3593(a).

**DISCUSSION**

Briseño's motion attacks the death penalty generally, and also addresses the

specific aggravating factors underlying the government's seeking of the death penalty

in Briseño's case. Such motions are common practice in recent cases involving capital

punishment, and the arguments propounded here aren't new. *See, e.g.*, *United States v.*

*Williams*, No. 4:08-cr-00070, 2013 U.S. Dist. LEXIS 45323 (M.D. Pa. Mar. 29, 2013); *United*

*States v. Runyon*, No. 4:08cr16-3, 2009 U.S. Dist. LEXIS 1770 (E.D. Va. Jan. 9, 2009).

Briseño frames his argument in seven parts. At the risk of sounding reductive,

arguments 1 through 5 and 7 challenge the mechanism and existence of capital

punishment generally. These arguments have been considered in nearly every, if not

every, federal capital case in recent decades. I won't reinvent the wheel here, although

I'll briefly review each argument. Briseño bears the burden of proving that the FDPA is

unconstitutional because the law was duly enacted by Congress and is therefore

presumed constitutional. *See United States v. Sampson*, 486 F.3d 13, 20 (1st Cir. 2007)

(citing *INS v. Chadha*, 462 U.S. 919, 944 (1983); *Lujan v. G & G Fire Sprinklers, Inc.*, 532

U.S. 189, 198 (2001)).

Part 6 of Briseño's brief requests that certain aggravating factors alleged in this

case be stricken, or that the government at least be required to particularize the

allegations underlying these factors. These factors, like the general arguments against

capital punishment, have been thoroughly litigated and addressed in judicial opinions,

and I will rely on the reasoning of those opinions in my discussion.

## General Challenges to Capital Punishment

Briseño's first argument is that the death penalty operates in an arbitrary,

capricious, irrational, and discriminatory manner. (DE 1027 at 32-68.) The argument is

that the death penalty is applied so arbitrarily that it can't be claimed that there is a

rational basis for applying it in the few cases in which the government seeks it – it is

compared to the randomness of being struck by lightning. Briseño attempts to connect

his argument to the Supreme Court's decision striking down Georgia's capital

punishment statute in effect in 1972. *See Furman v. Georgia*, 408 U.S. 238 (1972). Like

offenders are not treated alike, Briseño argues. He claims that it is pure chance whether

a defendant is subjected to a capital trial, and further chance whether the jury imposes a

capital sentence – part dumb luck, and part unconstitutional distinguishing factors like

the defendant's race, the victim's race and gender, and in what part of the country the crime was committed. Briseño cites to extensive statistics and case summaries to support his points.

This first argument has been made by other defendants and rejected at length by other courts. *See, e.g.*, *McCleskey v. Kemp*, 481 U.S. 279, 306-07 (1987) (absent showing that death penalty operates arbitrarily and capriciously, defendant can't prove constitutional violation by showing similarly situated defendants did *not* receive death penalty); *United States v. Sampson*, 486 F.3d 13, 23-26 (1st Cir. 2007) (death penalty discretion must be directed so verdicts are reasoned and individualized; government process for seeking death penalty has numerous procedural safeguards; case summaries can't capture the factors unique to each case that lead to verdict; to prevail under Equal Protection Clause defendant must prove purposeful discriminatory in his own case); *United States v. Mitchell*, 502 F.3d 931, 981-83 (9th Cir. 2007) (no right to "inter-case proportionality review"; statistical data about disproportionate impact of death penalty is insufficient to prove unconstitutionality; rarity of federal executions doesn't render FDPA unconstitutional).

I'll only go on briefly to point out some of the flaws of the deployment of the first argument in this case. Anytime a decisionmaker has discretion, facially similar cases are going to turn out differently because every case is unique. The Supreme Court's concern

in *Furman* and since is not the existence of discretion, but of unguided discretion. As the brief overview of the FDPA above demonstrates, the federal death penalty is highly structured. The fact that the government is selective in seeking the death penalty and juries are even more careful in applying it isn't an argument against it. The defense's elevator pitch versions of the facts of various cases can't do justice to the unique facts and circumstances in each murder case that lead to the verdict, and can't prove that the death penalty is applied arbitrarily. Briseño stands accused of six murders, seven attempted murders, and various other crimes and acts of violence committed in connection with the activity of a street gang. This case is distinguishable from other murder cases, and Briseño is distinguishable from his co-defendants, so the fact that he is the only one facing a capital charge isn't proof of arbitrariness. Briseño hasn't met his burden of proving that the FDPA is unconstitutionally arbitrary and capricious. Additionally, several of his arguments don't actually apply to him or to this case. Indiana is not in the defense's regional "death belt." None of the alleged murder victims were women (statistically more likely to lead to capital punishment). The defense doesn't allege that juror bias based on interracial murder will be an issue based on the victims in *this* case.

*Second,* Briseño argues that the current federal death penalty statute, the Federal Death Penalty Act of 1994 ("FDPA"), was invalidated by *Ring v. Arizona*, 536 U.S. 584

(2002). (DE 1027 at 68-95.) That is, under the FDPA a defendant isn't eligible for the death penalty unless the government proves beyond a reasonable doubt to the jury that the defendant acted with one of the four possible threshold intents and that at least one statutory aggravating factor applies. *See* 18 U.S.C. § 3591(a)(2), 3592, 3593(b) - (e). Therefore, Briseño argues, these factors increase the maximum possible sentence, and so must be brought before the grand jury and charged by indictment based on the reasoning in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The problem with this argument is that the government did precisely that in this case. But Briseño's rejoinder is that by doing so the government exceeded its authority under the FDPA. The FDPA states that the government must notify the defendant if it intends to seek the death penalty and, if so, what aggravating factors the government will try to prove. *See* 18 U.S.C. § 3593(a). But the FDPA is silent about the function of the grand jury with respect to aggravating factors. Briseño claims this invalidates the FDPA, and prosecutors simply deciding to present aggravating factors to the grand jury, or courts ordering them to, is an impermissible usurpation of the legislature's powers.

Courts have rejected the *Ring* argument and allowed the government's presentation of the death penalty gateway factors to the grand jury. *See United States v. Mikos*, 539 F.3d 706, 715-16 (7th Cir. 2008) ("*Ring* does not hold or imply that any part of the Federal Death Penalty Act is unconstitutional."); *United States v. Fell*, 531 F.3d 197,

237 (2d Cir. 2008); *United States v. Sampson*, 486 F.3d 13, 21-22 (1st Cir. 2007) (collecting cases); *United States v. Mitchell*, 502 F.3d 931, 979 (9th Cir. 2007). The FDPA is not facially unconstitutional because *Ring* doesn't say anything *contrary* to it. *United States v. Lecroy*, 441 F.3d 914, 921 (11th Cir. 2006) (collecting cases) ("The major flaw in [this] argument is that nothing in the Act forbids, or is inconsistent with, prosecutors' taking the additional step of including the statutory aggravating factors in the indictment and submitting same to the grand jury."). *Ring* works a change in criminal procedure, which is properly in the courts' bailiwick. *Sampson*, 486 F.3d at 21-22 (collecting cases). But preparing the Indictment for the grand jury's review and approval is squarely within the purview of the executive branch of government. Presenting aggravating factors to the grand jury isn't something that requires legislation, it doesn't require a big shift or creation of any new procedures or decisionmaking bodies, or even the drafting of new and exotic written instruments. *Sampson*, 486 F.3d at 22-23.

*Third,* Briseño argues that the special findings in the Superseding Indictment underlying the capital charges should be stricken and the NOI dismissed because the Indictment violates the Fifth Amendment. (DE 1027 at 95-107.) The argument is basically that the grand jury didn't hear the full story when it voted on the capital Indictment, and just saw the capital eligibility factors out of context, so couldn't fully consider whether Briseño should be charged with capital offenses. The grand jury voted

on the required intent and the statutory aggravating factors, but it wasn't told that these were threshold factors for a capital charge, and the grand jury wasn't informed of the non-statutory aggravators or the mitigating factors, which must also be weighed in determining whether a death sentence is justified.

This third argument, too, has been thoroughly considered by courts and has been found wanting. As established above in the address of the *Ring* argument, the grand jury must consider any factor that can increase the *maximum possible* sentence, not all of the factors the petit jury will consider in deciding the *actual sentence*. The grand jury considered the threshold factors for death penalty eligibility, and once the grand jury found that those were met, Briseño became eligible for the death penalty; that is the maximum possible sentence there is, so no other factors could increase the possible sentence, and no other factors need be included in the indictment. *United States v. Fell*, 531 F.3d 197, 236-38 (2d Cir. 2008) (collecting cases) ("Whether or not [the defendant] *should* be sentenced to death was a calculation made by the jury based on a variety of statutory and non-statutory considerations. Accordingly, the factors that [the defendant's] jury assessed when determining the permissibility of the death penalty in his case did not change the maximum sentence authorized under the statute. . . . [T]he government's failure to include the non-statutory aggravating factors in the indictment did not violate the Fifth Amendment."); *see also*, *United States v. Mitchell*, 502 F.3d 931,

979 (9th Cir. 2007); *United States v. Lecroy*, 441 F.3d 914, 922 (11th Cir. 2006).

("*[N]onstatutory* aggravating factors need *not* be included in the indictment.

Nonstatutory factors are considered only after a defendant has been rendered death-

eligible by a finding—from both the grand and petit juries—of the normal elements of

the crime (including *mens rea*) and at least one statutory aggravating factor. Non-

statutory factors do not operate to increase the potential punishment of a defendant,

thus potentially triggering the indictment requirements . . . ."; discussing like outcomes

in *Higgs v. United States*, 353 F.3d 281, 298-99 (4th Cir. 2003), and *United States v.

Bourgeois*, 423 F.3d 501 (5th Cir. 2005)). For the same reason, the grand jury doesn't need

to consider the mitigating factors or weigh the mitigators and aggravators. *See United

States v. Purkey*, 428 F.3d 738, 749-50 (8th Cir. 2005) ("[I]t makes no sense to speak of the

weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a

grand jury must find probable cause.").

*Fourth*, Briseño argues that the FDPA doesn't provide an adequately structured

approach to allow the jury to make a reasoned decision between execution and a

sentence of life imprisonment without the possibility of parole. (DE 1027 at 107-14.) The

upshot of this argument is that the FDPA's process for death penalty cases is so

complicated juries can't possibly understand and properly implement it. Briseño's brief

cites statistics from various articles and studies that purport to show that jurors wildly

misconstrue the instructions that they're given on key points in death penalty cases. But as was the issue with the defense's copious statistics on other points, statistics about other cases won't convince me that the jury in this case isn't going to be able to understand what I tell them. *See Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("the 'crucial assumption' underlying the system of trial by jury 'is that juries will follow the instructions given them by the trial judge.'" (quoting *Parker v. Randolph*, 442 U.S. 62, 73 (1979))). Defense counsel will have a hand in preparing the jury instructions in this case, and can bring with them the knowledge gained from the studies they cite. *See, e.g.*, *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist. LEXIS 45323, at *52-53 (M.D. Pa. Mar. 29, 2013). Beyond that, even if I were to believe that the statistics could prove a rule, I'm not convinced of the accuracy of the figures – the outcomes of a study depend heavily on the way questions are asked, when they're asked, who decides to participate, and a slew of other factors. I join the other courts that have rejected the argument that the FDPA is unconstitutional because it causes crippling juror confusion. *See, e.g.*, *Williams*, 2013 U.S. Dist. LEXIS 45323, at *52-53; *United States v. Runyon*, No. 4:08cr16-3, 2009 U.S. Dist. LEXIS 1770, at *4-5 (E.D. Va. Jan. 9, 2009); *United States v. Regan*, 228 F. Supp. 2d 742, 746-47 (E.D. Va. 2002).

I've been studying the FDPA for the past year in preparation for this case, counsel for this case have been working on it for even longer, and while I won't deny

we have our work cut out for us in helping the jury through the process, I'm confident we're up to it. Briseño's motion is useful going forward in flagging some of the issues that we'll need to be especially conscious of if the time comes to discuss and draft penalty phase jury instructions. These include the effect of non-unanimity among the jurors, different standards of proof and unanimity requirements for mitigators and aggravators, and the all-important concept that the penalty is a gestalt decision, a weighing of factors that is qualitative, not quantitative. The jurors will be instructed that they cannot arrive at their decision by simply adding up the factors on either side of the balancing.

*Fifth,* Briseño argues that the death penalty should be invalidated due to the risk of executing innocent people. (DE 1027 at 114-20.) It's not clear exactly which provisions of the Constitution the defense is invoking here, but it seems most like an argument that capital punishment violates Fifth Amendment substantive due process because innocent people will inevitably be executed. Other capital defendants have made a procedural due process argument that they are entitled to seek exoneration for as long as it takes, meaning until the end of their natural lifespan, because exoneration often takes decades. The two due process arguments fail for the same reasons.

To be sure, the prospect of an innocent person being executed is one of the most disturbing things that one could ever imagine. But Supreme Court opinions have

acknowledged that grim reality and neither Congress nor the Supreme Court has been swayed by that troubling possibility. I am foreclosed from blazing that trail, and so I adopt the reasoning of the other courts that have rejected this argument. *See, e.g.*, *United States v. Sampson*, 486 F.3d 13, 27-29 (1st Cir. 2007); *United States v. Mitchell*, 502 F.3d 931, 983 (9th Cir. 2007) ("The danger of executing the innocent is one the Supreme Court has long been aware of."); *United States v. Quinones*, 313 F.3d 49, 62-69 (2d Cir. 2002) ("*Herrera* [*v. Collins*, 506 U.S. 390 (1993)] prevents us from finding capital punishment unconstitutional based solely on a statistical or theoretical possibility that a defendant might be innocent."); *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist. LEXIS 45323, at *53-57 (M.D. Pa. Mar. 29, 2013) (collecting cases). In sum, due process entitles a person to *process*, to full exercise of the prescribed legal remedies, but once these are exhausted he is not due any additional process. Due process vastly increases the likelihood of getting the right answer, but doesn't guarantee it, and due process isn't violated simply by the possibility of a wrong answer.

*Finally,* Briseño's last argument against the death penalty generally is that evolving standards of decency render capital punishment unconstitutional and require its abolishment. (DE 1027 at 151-54.) Volumes have been written arguing for and against this argument in an effort to gauge the standards of American decency. It's a hard concept to get your mind around. But for present purposes, it is enough to say that in a

hierarchical system of courts, I have to do as I'm told, and my marching orders from the Supreme Court make clear that we have not evolved as a society beyond the death penalty. *See, e.g., United States v. Sampson*, 486 F.3d 13, 29 (1st Cir. 2007) ("Because *Gregg* [*v. Georgia*, 428 U.S. 153 (1976)], *Roberts* [*v. Louisiana*, 428 U.S. 325 (1976)], and *Chapman* [*v. United States*, 500 U.S. 453 (1991),] are binding upon us, we reject [the defendant's] bedrock claim and hold that the death penalty itself is not unconstitutional."); *United States v. Quinones*, 313 F.3d 49, 61-70 (2nd Cir. 2002) (extensive discussion of the history and tradition of the death penalty; "[i]n sum, if the well-settled law on this issue is to change, that is a change that only the Supreme Court or Congress is authorized to make") (citing, *et seq., Herrera v. Collins*, 506 U.S. 390 (1993); *Chapman*, 500 U.S. 453; *Gregg*, 428 U.S. 153); *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist. LEXIS 45323, at *65-66 (M.D. Pa. Mar. 29, 2013).

In sum, while Briseño raises interesting points and ample fodder for civic debate, his is not the case and this is not the Court in which capital punishment will be found unconstitutional.

### Specific Challenges to Alleged Aggravating Factors

Moving back to Briseño's sixth point, some discussion of individual aggravating factors is necessary. (*See* DE 1027 at 120-51.) At the hearing on Briseño's motion, I

ordered the government to provide additional information on certain aggravators, so to that extent the defense's motion has been granted in part already.

I'll also note at this point that, regardless of the limits of this Opinion and Order, I of course retain the authority to exclude evidence at any stage of the trial, and I notify the parties that I will consider their objections and I may also act *sua sponte*. During the guilt phase, when it comes to the issue of relevance, I'll make this determination based on Federal Rule of Evidence 403, which permits me to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." During the penalty phase — if we get there at all —"information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Note the difference: while the Rule 403 balancing requires probative evidence to be excluded if it is *substantially outweighed* by unfair prejudice etc., the standard is different at the penalty phase. It is a true balance; the word "substantial" doesn't appear.

Moving on to the substance of Briseño's claim, I'll start with the standard of review for factors that the jury will be instructed to use in weighing the penalty. The death penalty decision is meant to be an individualized one, which means there can't be

a one-size-fits-all answer, and it is inevitable that jurors will be relied upon to exercise wide discretion, tempered by their judgment and reason. "Because the proper degree of definition of eligibility and selection factors often is not susceptible of mathematical precision, [the Supreme Court's] vagueness review is quite deferential. Relying on the basic principle that a factor is not unconstitutional if it has some common-sense core of meaning that criminal juries should be capable of understanding, [the Supreme Court has] found only a few factors vague . . . ." *Tuilaepa v. Cal.*, 512 U.S. 967, 973-74 (1994) (quotation marks, ellipsis, citations omitted); *see also, Jones v. United States*, 527 U.S. 373, 400-02 (1999). There is "a long line of Supreme Court cases that have emphasized the importance of allowing the sentencing body to have full and complete information about the defendant." *United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004). "Indeed, the sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Tuilaepa v. Cal.*, 512 U.S. 967, 979-80 (1994) (quotation marks, citations omitted).

Briseño's motion challenges the statutory aggravating factor of substantial planning and premeditation, which is alleged in each of the six charged murders. He also challenges the non-statutory aggravators of victim impact and future dangerousness, and in particular he challenges separately the future dangerousness

sub-factor of "lack of remorse." In addition to challenging their use, Briseño's motion seeks information about what the government intends to try to prove with respect to each of these aggravating factors. I'll address each challenged aggravator.

### Substantial Planning

Briseño argues that "substantial planning and premeditation" is vague. He asks: when does planning go from minimal or moderate on the one hand, to substantial on the other? Reasonable people could debate the issue — and perhaps that is just the point. It's simply a matter for the jury to debate and sort out using their experience and commonsense. Courts that have considered the issue have held that the term "substantial planning" isn't too vague for juries to understand and apply. *See, e.g.*, *United States v. Sampson*, 335 F. Supp. 2d 166, 210 (D. Mass. 2004) ("The statute states that there must be substantial premeditation and planning. In this context, the court construes 'substantial' to mean 'large.' Defining 'substantial' as 'large' is both appropriate and comports with a common-sense understanding of the word." (citing *United States v. McCullah*, 76 F.3d 1087, 1110-11 (10th Cir. 1996); additional citation omitted); *see also, United States v. Fields*, 516 F.3d 923, 940 (10th Cir. 2008); *United States v. Barnette*, 390 F.3d 775, 786 (4th Cir. 2004) ("'Substantial planning and premeditation,' as included in the statutory aggravating factor of § 3592(c)(9), means '"a higher degree of planning than would have the words 'planning and premeditation' alone - i.e., more

than the minimum amount sufficient to commit the offense."'" (citations omitted)),

*vacated on other grounds*, 546 U.S. 803 (2005); *United States v. Bin Laden*, 126 F. Supp. 2d

290, 296 and 296 n.7 (S.D.N.Y. 2001) (collecting cases). Some of these cases offer

definitions, but I don't find any of them to be particularly helpful — reasonable people

know what the word substantial means and can apply it through the lens of their

everyday experience. In all events, that is a matter to be decided when we argue jury

instructions. For now, it is enough to say that the term is not vague.

Taking a slightly different tack, Briseño also argues that all murders can be said

to involve substantial planning, so this aggravating factor doesn't do its job of

narrowing the class of people eligible for the death penalty. This is not so, again as

courts have held. *See, e.g.*, *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist.

LEXIS 45323, at *78-80 (M.D. Pa. Mar. 29, 2013) (collecting cases).

Moving on to the specifics of the substantial planning factor, there is a hiccup in

the government's allegations. The government's response brief indicates that it has two

theories of substantial planning. One is the usual sense in which I would think of this

factor – an allegation that Briseño formed a particular plan to kill then carried out that

plan. In this form, this aggravating factor has been widely accepted by other courts, and

I've adopted the reasoning of those courts.

The second theory is the argument that the IGs' "shoot-on-sight" policy qualifies as substantial planning in each of the six specific murders charged against Briseño. The government provided me with no authority supporting the second theory. The government did try, stretching *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996), very thin. In *McCullah* the defendant and his co-conspirators spent weeks planning the murder of a guy named Mr. Rogers. Rogers operated a used car dealership. McCullah was to lure Rogers to the ambush site in the guise of a prospective used car buyer. But then, as bad luck would have it (for everyone but Rogers), on the day of the ambush Rogers was unavailable, so he sent an employee on the test drive with McCullah. Instead of calling off the plan on account of having the wrong victim in the car, McCullah drove to the ambush then hurried out of the car and let his comrades kill the wrong victim. Having a very elaborate plan but springing the trap on the wrong victim is nothing like, and doesn't support, the government's shoot-on-sight theory in this case.

Substantial planning as an aggravating factor for the charged murder means substantial planning for *that* murder. It doesn't mean a generally violent lifestyle, a general willingness or even eagerness to kill, or a habit of carrying a weapon. *See, e.g.*, *United States v. Roman*, 371 F. Supp. 2d 36, 46-47 (D.P.R. 2005) (holding no reasonable juror could find substantial planning in murder committed during armed robbery

"where the evidence shows no planning to commit murder prior to defendants' arrival at the scene, and at most one minute of planning during the commission of the crime"; "the possession of a weapon is not alone enough to infer a substantial plan to commit the murder of a specific person"). **Briseño's motion to strike the substantial planning and premeditation factor is therefore GRANTED as to the government's shoot-on-sight theory only.**

To make sure the government wasn't relying completely on the second, shoot-on-sight substantial planning theory for any of the murders, during the hearing on Briseño's motion I asked the government to describe its theory of substantial planning for each of the six murders, and it did so. To this extent, Briseño's request for particularization (DE 1027 at 131) on this factor was GRANTED. The government provided a basis other than the general shoot-on-sight theory for each murder, although it was fairly thin for the murder of Harris Brown charged in count 17. The proffered basis for that murder was IG discussions around the time of the murder about the rival Black P. Stones gang members dealing drugs in IG territory, and the need to keep them away. This is more than a general gang policy of shooting rivals on sight, it's shooting a member of a particular gang for a particular reason.

After hearing the evidence at trial, I will be in a better position to determine whether the murder of Harris Brown involved "substantial planning." If the evidence is

insufficient to establish substantial planning on the Brown murder (or any other murders for that matter), I can reconsider my ruling and strike that part of the notice at that time. But for now, the government's proffer was at least sufficient to proceed to trial with the substantial planning factor on all six murders.

### Victim Impact

Briseño argues that the victim impact factor as alleged is unconstitutionally vague, lacking in specifics, broader than permitted by statute, and doesn't narrow the class of death-eligible defendants. However, such evidence is an accepted part of death penalty trials, and in fact is mentioned in the FDPA. *See* 18 U.S.C. § 3593(a); *Jones v. United States*, 527 U.S. 373, 402 (U.S. 1999) ("[A]s we have made clear, victim vulnerability and victim impact evidence are appropriate subjects for the capital sentencer's consideration."); *Payne v. Tennessee*, 501 U.S. 808, 823, 827 (1991); *see also*, *United States v. McVeigh*, 153 F.3d 1166, 1217 (10th Cir. 1998) ("*Payne* allows the prosecution to introduce evidence during the penalty phase that provides a quick glimpse of the life petitioner chose to extinguish in order to show the value of the victim's loss to society. However, *Payne* did not overrule the prohibitions in *Booth* [*v. Maryland*, 482 U.S. 496 (1987),] against the admission of information concerning a victim's family members' characterization of and opinions about the crime, the defendant, and the appropriate sentence." (quotation marks, citations omitted.)). It does

serve to individualize the penalty determination in any given case because the victim impact evidence will be different for each victim or victims.

Briseño's overbreadth challenge refers to the government's inclusion of the impact on the victims' friends, as well as family, in the statement of the victim impact factor in the NOI. While the FDPA only specifically references the impact on the victim's family, and not friends, the language is not exclusionary: "The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." 18 U.S.C. § 3593(a). The FDPA's list of aggravators also ends by saying that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). This language is broad enough to allow for the testimony of a victim's friend who was impacted by his death. *See United States v. Barrett*, 496 F.3d 1079, 1099 (10th Cir. 2007) ("Two features of this statutory language are important to note. First, it expressly indicates that a victim impact statement may identify the victim and outline the extent and scope of the injury and loss suffered by the victim and his family. Second, and perhaps more importantly, the use of the phrases 'may include' and 'any other relevant information' clearly

suggests that Congress intended to permit the admission of any other relevant evidence, including, as authorized by *Payne*, evidence giving the jury a glimpse of the victim's personality and the life he led[, including the testimony of the victim's friends].”); *see also United States v. Fields*, 516 F.3d 923, 946-47 (10th Cir. 2008).

Briseño's request for additional information about this factor was GRANTED during the hearing, and the government described the evidence it intends to introduce. The government will call one or two people impacted by the death of each murder victim to talk about the victim, the victim's life, and the effect of losing him. (I am inclined to limit the government to one witness per victim, but that matter can be taken up later at the penalty phase of the trial, should we get there). My intention is to allow only very limited testimony, and indeed the government agrees. At the hearing, the prosecutor told me that he anticipates that direct examination of each victim impact witness is unlikely to last more than about 10 minutes. There will likely be a photo showing each victim when they were alive, but there won't be any multimedia, photo montage or video presentations during the victim impact part of the hearing, other than a clip from a news segment that shows an interview with murder victim Miguel Colon. **The government must provide the defense with a list of victim impact witnesses by February 13, 2015.**

There are two other matters to briefly address related to victim impact testimony. At the hearing I ordered the government to provide the defendant and the Court a copy of the Colon video clip as soon as practicable (the government had only recently learned of the news story's existence). **The government is now reminded of that order.** Also, if the government's plans for victim impact evidence change materially from the government's representation at the hearing, as described in this Order, the government is **ORDERED to notify the Court and the defense before attempting to offer the additional evidence before the jury.**

*Future Dangerousness*

The government's alleged "future dangerousness" factor has three sub-factors: (1) low potential for rehabilitation as demonstrated by repeated criminal violent acts; (2) a willingness to take human life and a lack of remorse for acts of violence as demonstrated by statements made after violent acts; and (3) a stated desire to impose a rule requiring IGs to shoot at members of rival gangs on sight. Briseño argues that future dangerousness is too vague, may be seen by jurors as applying to all murderers, and is impossible to reliably predict. He also wants to clarify the scope of the government's future dangerousness argument, given that if Briseño is convicted of any of the death-eligible crimes then the only sentencing choice other than death is life in prison without the possibility of parole. Briseño argues that future dangerousness

should therefore be limited to the prison context. Briseño requested a hearing on this factor, which was GRANTED.

The aggravating factor of future dangerousness has a distasteful odor to it reminiscent of Steven Spielberg's *Minority Report.* It is nonetheless widely accepted and allowed by courts. *See United States v. Corley*, 519 F.3d 716, 723-24 (7th Cir. 2008) (accepting future dangerousness factor in addressing what evidence is admissible to demonstrate it); *United States v. Johnson*, 223 F.3d 665, 671 (7th Cir. 2000) (same); *see also*, *United States v. Basham*, 561 F.3d 302, 331 (4th Cir. 2009) ("The Supreme Court has recognized future dangerousness as a legitimate aggravating factor in capital proceedings." (citation omitted.)); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 303-04 (S.D.N.Y. 2001) ("The Supreme Court has discussed with approbative language the submission of a defendant's future dangerousness as a subject for a penalty jury's consideration. Not surprisingly, lower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the FDPA, including instances where such factor is supported by evidence of low rehabilitative potential and lack of remorse." (citations omitted.)). It is true that the concept of future dangerousness is one of the things judges consider every day when sentencing defendants. And a low potential for rehabilitation is not irrelevant here – those serving a life sentence are still people living among other people, and rehabilitation speaks to

their ability to function appropriately, and even constructively, in prison society. I will take up the lack of remorse sub-factor shortly, but for now I will say that I find it to be relevant to the sentencing decision and admissible, but with limits. The shoot-on-sight sub-factor, if found to be present, demonstrates a lack of regard for human life and general orderly society, and is therefore germane to future dangerousness.

During the hearing on the Motion to Strike the Notice, the government mostly agreed that future dangerousness refers to the practical reality of Briseño's future if he is convicted — his residence within the confines of the federal corrections system. That limitation makes sense to me because if we get to the penalty stage then the jury faces a binary choice for Briseño's sentence: the death penalty or life in prison without parole. More importantly, the Supreme Court has held "that whenever future dangerousness is at issue in a capital sentencing proceeding . . ., due process requires that the jury be informed that a life sentence carries no possibility of parole." *Shafer v. S.C.*, 532 U.S. 36, 51 (2001). I don't mean that the government needs to belabor the binary nature of the choice — that will be noted in the jury instructions, and defense counsel may choose to address it — but I do mean that the government will not be permitted to mislead the jury or suggest that Briseño will somehow be dangerous to the general public. *United States v. Fields*, 516 F.3d 923, 942 (10th Cir. 2008) ("The aim is just to ensure that the jury

is not misled about a defendant's future incarceration status when assessing evidence of his future dangerousness.")

This contextual limitation doesn't take the teeth out of the future dangerousness factor at all – prisons are well known to be violent places, and danger to other inmates and to prison personnel is certainly worthy of consideration. During the hearing the government went off on a tangent about a hypothetical prison break and Briseño's hypothetical danger to the general public while on the lam. That seems like such an unlikely event and a blatant attempt at fearmongering that I am disinclined to allow it. All sorts of things *might* happen. If Briseño were on trial for murdering someone after escaping from prison, this argument would be relevant. But the government didn't suggest that Briseño was unusually likely to escape, and allowing argument about an escapee on a rampage seems unfairly prejudicial, and also to fly in the face of the individualized, personalized consideration that the death penalty must be based on.

One additional issue that arises under the future dangerousness factor is that of the government's use of unadjudicated criminal conduct to demonstrate future dangerousness. During the hearing I asked the government if they intended to introduce evidence of any unadjudicated conduct during the penalty phase, should there be one. The government pointed out that the criminal enterprise conspiracy charge of the Indictment (under 18 U.S.C. § 1962(d)) will involve evidence of many

crimes that aren't charged separately to prove the existence of the conspiracy and

Briseño's participation in it. The acts that the government may introduce as evidence of

the enterprise are detailed in the Indictment, and in the government's Notice of Intent to

Introduce Enterprise Evidence and a supplement to it. (DE 732, 1198.)

The government said that the only evidence of unadjudicated conduct it will

attempt to introduce at the sentencing phase will be testimony about alleged animal

cruelty to ducks. The government stated during the hearing that this evidence is

relevant to future dangerousness. The only sub-factor within which it could fall is the

first, a low potential for rehabilitation as demonstrated by repeated violent criminal

acts. I am not making a final determination now, but I remind the government that I

will very carefully scrutinize evidence of unadjudicated criminal conduct to ensure that

the evidence is reliable and not unduly prejudicial. *See United States v. Corley*, 519 F.3d

716, 723-26 (7th Cir. 2008). **With this in mind, the government is ORDERED to notify**

**the Court in advance of any attempt to introduce to the jury evidence of any**

**unadjudicated criminal conduct not previously disclosed for an evaluation of**

**admissibility.**

Briseño also takes issue with the lack of remorse sub-factor separately, claiming

that it violates his rights to remain silent and to a fair trial, and that it's inherently

unreliable. This aggravating factor, in principle, is not a controversial one. *See, e.g.*,

*United States v. Mikos*, 539 F.3d 706, 718 (7th Cir. 2008) (the Supreme Court has approved

the lack of remorse factor (citing *Zant v. Stephens*, 462 U.S. 862, 886 n.22 (1983))). I agree

with Briseño, however, that it needs clarification in this case. His request for

particularization is therefore GRANTED, and that particularization was provided in the

government's response brief and further clarified during the hearing. The government's

brief explains that it doesn't intend this factor to get at Briseño's decision not to testify

or express remorse during the trial. (DE 1062 at 76.) What the government wants to

introduce is evidence that Briseño "admitted his conduct to others, bragged about it,

and encouraged others to do the same." (*Id.*) That sort of evidence is germane to the

sentencing decision, and is not categorically inadmissible, subject to my gatekeeping

determinations and the evidence actually showing callousness and braggadocio about

violent acts. *See, e.g.*, *United States v. Walker*, 910 F. Supp. 837, 855 (N.D.N.Y 1995)

(striking lack of remorse factor based on evidence of statements showing "callousness"

and "defiance" because the statements were more unfairly prejudicial than probative

and were too trivial to bear the weight of being an aggravating factor).

However, Briseño's point about the nomenclature is well taken. Until the

government explained its intention for this factor I was genuinely uncertain what was

intended, and the natural meaning of the phrase "lack of remorse" does suggest

something other than what the government intends. *See, e.g.*, *United States v. Roman*, 371

F. Supp. 2d 36, 50 (D.P.R. 2005) ("There must be a showing of continuing glee,

boastfulness, or other affirmative conduct which indicates a pervading and continuing lack of remorse following the criminal conduct. In addition, the government may not urge the applicability of the aggravator on information that has a substantial possibility of encroaching on the defendants' constitutional right to remain silent." (citations omitted.)). I will not strike this factor at this time, but I will closely monitor the evidence adduced at trial to ascertain whether it actually demonstrates a lack of remorse in a sense that is appropriate to constitute a non-statutory aggravating factor.

## CONCLUSION

FOR THE FOREGOING REASONS, Defendant Briseño's Motion to Strike the Notice of Aggravating Factors or for Additional Particularization is **GRANTED IN PART AND DENIED IN PART**, as described in this Opinion and Order. (DE 1027.)

SO ORDERED.

ENTERED: January 12, 2015

         /s/ Philip P. Simon
         PHILIP P. SIMON, CHIEF JUDGE
         UNITED STATES DISTRICT COURT