UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 2:11CR77-PPS |
| v. | ) | and |
| | ) | No. 2:18CV74-PPS |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

A jury found Juan Briseno guilty of charges including racketeering conspiracy, drug conspiracy, and multiple murders in aid of racketeering, and I sentenced Briseno to 7 terms of life imprisonment, plus an aggregate term of 20 years. [DE 1664 at 3.] The evidence at trial showed that Briseno was a member of the Imperial Gangsters street gang, whose operations included substantial dealings in illegal drugs and the frequent use of violence to protect both the drug business and their gang.

Now before me is Briseno's motion under 28 U.S.C. §2255 making collateral challenges to his conviction. Section 2255 provides relief for a convicted defendant if he can demonstrate "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Briseno's grounds for relief are claims of ineffective assistance of trial counsel. A criminal defendant has a right to the effective assistance of counsel under the 6th Amendment to the U.S. Constitution. A claim of

ineffective assistance requires a showing that "counsel's performance was deficient and [Briseno] was prejudiced as a result." *Felton v. Bartow*, 926 F.3d 451, 463 (7th Cir. 2019).[1]

When considering an ineffective assistance claim, a court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). The burden is on the defendant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* I must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The prejudice prong of an ineffective assistance claim is met if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This standard is demanding. More is required than a mere possibility that "reasonable doubt might have been established if counsel acted differently," and "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111, 112 (2011).

---

[1] The government argues that Briseno's motion can be denied on the basis of the "concurrent sentence" doctrine, which permits a court to deny a collateral challenge that is made only to some counts of conviction, when other counts which are not challenged separately account for the entire length of a concurrent sentence. [DE 2008 at 14.] I decline to consider application of the doctrine, and will address Briseno's motion on the merits.

2

Briseno first argues that he is entitled to a new trial because his counsel failed to challenge various witnesses' unreliable identifications of Briseno as the shooter in several murders. Briseno reviews the identification evidence pertaining to the murders of Harris Brown, Latroy Howard, Michael Sessum, and Miguel Mejias, contending generally that "counsel failed to explore the false identifications made by witnesses." [DE 1949 at 10.] Briseno characterizes the identification evidence without citations to the transcript, and without offering any facts or arguments concerning counsel's performance in attempting to impeach or rebut the testimony Briseno deems unreliable. Briseno fails to develop any challenge to the adequacy of counsel's cross-examinations or rebuttal evidence. Instead, Briseno's ground for relief is ultimately that counsel was ineffective for failing to call an expert witness on eyewitness identification. [DE 1949 at 13.]

In support of his general contention that eyewitness identification is unreliable, Briseno cites studies published at www.innocenceproject.org. [DE 1949 at 12.] The report of the National Academy of Science offers best practices recommendations for law enforcement policies and procedures to obtain accurate eyewitness identifications, as well as recommendations to strengthen the value of eyewitness identification evidence in court. *Identifying the Culprit: Assessing Eyewitness Identification,* https://www.innocenceproject.org/wp-content/uploads/2016/02/NAS-Report-ID.

pdf, at pp.21-23 (2014). One of these recommendations is that judges "have the discretion to allow expert testimony on relevant precepts of eyewitness memory and identifications." *Id*. at 23.

Briseno cites no legal authority on the subject of such expert testimony. In a 2005 decision, the Court of Appeals noted a "long line of Seventh Circuit cases" affirming the exclusion of expert testimony regarding the reliability of eyewitness identifications based on findings that such testimony would not have been of assistance to the jury. *United States v. Carter*, 410 F.3d 942, 950 (7th Cir. 2005). These cases include *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999), in which the Seventh Circuit observed that "the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury." *See also United States v. Welch*, 368 F.3d 970, 974 (7th Cir. 2004) (concluding that proffered expert testimony only addressed issues of which the jury is already generally aware). In 2012, the Seventh Circuit affirmed a district court's rejection of an expert on the fallibility of voice identifications, asking the question "If jurors are told merely that voice identifications frequently are mistaken, what are they to do with this information?" *United States v. Schiro*, 679 F.3d 521, 529 (7th Cir. 2012).

Briseno's description of the substance and purpose of such expert testimony in his case is brief: "to explain to the jury why these witnesses had unreliable memories, and why their identifications should not be accepted without question." [DE 1949 at 13.] The argument is too thin to hold water. What would the qualifications of such a

witness be? What specific expertise and opinions would be offered about the observation and memory that underlie eyewitness identifications generally? How would that expertise have been pertinent to the jury's assessment of the particular identification witnesses at Briseno's trial? Why would (or should) expert testimony that "these witnesses had unreliable memories" have been allowed, even if it had been proffered?

"Someone who proposes expert testimony must show how the findings apply to the litigation at hand." *United States v. Bartlett*, 567 F.3d 901, 907 (7th Cir. 2009). Briseno has failed to do this, and so has not demonstrated that his trial counsel were deficient for failing to offer an expert witness on the reliability of eyewitness identification. "Whether expert testimony regarding witness perception, memory, reliability, and deception could assist a properly-instructed jury in its task of evaluating trial testimony is controversial." *Jimenez v. City of Chicago*, 732 F.3d 710, 722 (7th Cir. 2013). Against this legal backdrop (which Briseno does not acknowledge), it was necessary for Briseno to persuade me not only that it was error for his counsel not to proffer such a witness, but that I would have admitted the testimony if offered. The case law I have reviewed suggests that it would have been within my discretion to exclude an eyewitness identification expert where the majority of eyewitnesses knew Briseno and where more than one witness identified Briseno in each murder. *Bartlett*, 567 F.3d at 906-07; *Carter*, 410 F.3d at 950; *Hall*, 165 F.3d at 1107.

Pertinent to Briseno's case, a frequently cited Seventh Circuit opinion affirming the exclusion of such expert testimony pointed out that "studies do not suggest that people who have known one another for weeks or years are apt to err when identifying them in court." *Bartlett*, 567 F.3d at 906. Instead, "[s]tudy after study has shown very high error rates in the identification of *strangers*." *Id*. (emphasis added). As the government points out, even the National Academy of Science report relied on by Briseno defines "eyewitness identification" as "recognition by a witness to a crime of a culprit *unknown* to the witness." NAS-Report-ID.pdf at 1, n.1 (emphasis added).

The government reviews the evidence relevant to the Latroy Howard murder, which included a video of the murder and five witnesses who identified Briseno – Feliciano, Wallberg, Baldazo, Weaver, and Torres. [DE 2008 at 16.] Expert testimony of the kind Briseno invokes is not shown to be (or even contended to be) helpful to the jury's own assessment of the shooter in the video. And the five individuals who identified Briseno with respect to this shooting all knew him. [*Id*.] A sixth individual, Rodriguez, was not familiar with Briseno[*id*.], but as against the corroborating testimony of five other identification witnesses who knew Briseno, expert testimony about stranger identification would have had little value. *Bartlett*, 567 F.3d at 907 ("scholarly findings about eyewitnesses have only limited application when multiple witnesses identify the same person").

Similarly, with respect to the murders of Mejias and Sessum, Briseno was identified by Vincent Garza, who testified that he helped commit the murders, and

Weaver, who also knew Briseno beforehand. [DE 2008 at 16.] The stranger identification by witness Haryasz [*id.* at 17] would have been the only testimony subject to challenge by an identification expert, and the "limited application" of the expert testimony in those circumstances, even if admitted by the court, does not support a conclusion that trial counsel was ineffective for failing to attempt it.

The fact that the great majority of identification witnesses knew the defendant prior to the murders is a significant factor not only in the assessment of their identification, but in the appropriateness of expert testimony. *Welch*, 368 F.3d at 974 ("Unlike most eyewitnesses, the eyewitnesses in this case knew the defendant very well prior to the crime.") Given the Seventh Circuit's "long line of cases which reflect our disfavor of expert testimony on the reliability of eyewitness identification," Briseno's argument that such an expert should have been offered, would have been admitted, and likely would have produced acquittals constitutes swimming upstream. *Hall*, 165 F.3d at 1104. And the effort cannot succeed without a more in-depth analysis than has been offered here.

Another factor militated against the appropriateness of expert testimony on eyewitness identifications, and has not been addressed by Briseno in support of his §2255 motion. Two jury instructions given here – No. 9 and No. 15 – are essentially the same as those favorably approved in *United States v. Crotteau*, 218 F.3d 826, 832-33 (7th Cir. 2000), as properly cautioning the jury to "carefully weigh all of the circumstances surrounding" witness identifications of the defendant as the offender "before reaching

any conclusion." In *Crotteau*, the use of these "clear, concise, and unambiguous cautionary instructions on the reliability of eyewitness identifications" was a factor in the Court of Appeals' conclusion that the district court had not abused its discretion in excluding expert testimony on the subject. *Id*. at 833.

Nor am I persuaded that any *Strickland* prejudice has been (or could be) demonstrated based on the lack of an expert on the reliability of eyewitness identification. As the government points out, "multiple witnesses who knew and recognized Briseno prior to the murder identified him, and the 'stranger' identification corroborated those identifications." [DE 2008 at 17-18.] Briseno fails to show that the testimony of an expert on eyewitness identification, which would have only limited application against all that testimony, would have been admitted or would have created a substantial likelihood of acquittal on any of the murder charges.

Briseno's other ground in support of his §2255 motion is another ineffective assistance of counsel argument. Briseno claims that his trial counsel failed to challenge the notion that in committing the murders, Briseno was acting as a member of the racketeering "enterprise" as alleged in the indictment:

> At most, the government introduced evidence that Mr. Briseno had killed people, that he believed were members of rival gangs. However, an important distinction is the complete lack of evidence that Mr. Briseno committed these murders with the intent of furthering the IG's criminal conspiracy, or to maintain the gang's power and influence in the community.

[DE 1949 at 14.] Any assertion that Briseno's trial counsel overlooked this element in their presentation to the jury is clearly wrong. I quote from defense counsel's closing

8

argument in the guilt phase of the trial, in which he emphasized and explained what was necessary to bring these murder charges in federal rather than state court:

> Well, the way to get someone charged with a murder in federal court…is through murder in aid of racketeering.
> Why does that matter? Well, because in order to prove that Mr. Briseno is guilty of any of those counts, the murders, it has to be proven not just that there was a killing of a person intentionally but that it was done in aid of racketeering activity.

[DE 1471 at 10-11.]

Counsel then reviewed Instruction No. 28 with the jury, and explained its requirement that Briseno "knowingly became a member of the conspiracy with the intent to advance the conspiracy." [*Id*. at 11.] Counsel also highlighted to the jury the possibility of "a gang that is strictly for protecting its own people that are in the gang" and "people in that organization that are committing crimes but not related to the actual gang itself." [*Id*. at 16.] He used as an illustrative example the murder charges against Aaron Hernandez, a New England Patriots football player, which were not thought in any way to be in aid of the Patriots enterprise. [*Id*. at 16-17.] Then counsel addressed each murder count separately, and argued that the evidence showed Briseno did not commit any of those shootings in aid of racketeering but in each instance acted out of a personal motive that was not shown to be in furtherance of racketeering activity of the gang enterprise. [*Id*. at 27-29; 41-45; 48-50; 52-53.] The record clearly establishes that the defense team did not fail to focus the jury on the argument Briseno now raises.

9

Briseno also argues that his trial counsel erred by failing to object to the jury instructions on racketeering as proposed by the government. [DE 1949 at 13.] The brief is not crystal clear on what error is alleged in the RICO instructions submitted by the government, or what additional or alternative instructions defense counsel should have proposed. At one point Briseno argues that the defense failed to submit any instruction to "explain to the jury that Mr. Briseno is required to have agreed that members of the IGs would commit acts of racketeering." [DE 1949 at 15.] Instruction 29 in fact made clear that the "pattern of racketeering activity" required for a conviction on the racketeering conspiracy charged in Count One included a requirement that the jury "find beyond a reasonable doubt that the defendant agreed that some member or members of the conspiracy would commit at least two acts of racketeering as described in Count One, and that they were separate acts." [DE 1500 at 31.] This portion of the instruction – the Seventh Circuit's model jury instruction on the pattern requirement of 18 U.S.C. §1962(d) – clearly covers the particular element invoked by Briseno's argument.

The government (generously) construes Briseno's brief to argue that defense counsel should have proposed jury instructions requiring acquittal if "the government failed to prove that Mr. Briseno either agreed to join the conspiracy, or agreed to commit two racketeering acts." [DE 1949 at 15-16; DE 2008 at 20-21.] The first of these requirements – agreement to join the conspiracy – is squarely covered by element 2 of Instruction 28: "the Defendant knowingly became a member of the conspiracy with

intent to advance the conspiracy." [DE 1500 at 30.] As the government points out, the second of Briseno's suggestions is not an accurate statement of the law, which requires only Briseno's agreement that some member of the conspiracy would commit at least two acts of racketeering (as required by Instruction 29 set out in the previous paragraph), but not that Briseno himself agree to commit such acts. *United States v. Faulkner*, 885 F.3d 488, 492 (7th Cir. 2018) (racketeering conspiracy charge does not require proof that the defendant was "personally involved in two or more of the predicate acts"); *United States v. Tello*, 687 F.3d 785, 793 (7th Cir. 2012) ("[M]aking the commission of two or more predicate acts by each conspirator an essential element of the offense…would essentially…render the conspiracy offense set out in subsection (d) a nullity").

Finally, Briseno contends that his defense counsel "failed to include an instruction that if the government did not prove that Mr. Briseno agreed to commit these murders on behalf of the IGs, he would be acquitted of the racketeering conspiracy." [DE 1949 at 16.] Instruction 43, one of the court's jury instructions governing all the counts of murder in aid of racketeering, explicitly included the element that "the defendant's purpose in committing the murder was to maintain or increase his position in the Imperial Gangsters enterprise." [DE 1500 at 51.] Instruction 45 further addressed this element, explaining that it was met if the jury found that "the defendant committed a murder because he knew it was expected of him by reason of his membership in the Imperial Gangsters enterprise or that he committed it in

11

furtherance of that membership." [DE 1500 at 54.] These instructions were proper statements of the applicable law. *Faulkner*, 885 F.3d at 492; *United States v. DeSilva*, 505 F.3d 711, 715 (7th Cir. 2007). No deficiency is shown in the performance of defense counsel with respect to holding the government to its burden on the elements of the racketeering-related counts of conviction.

## Conclusion

Juan Briseno's motion under §2255 will be denied because he fails to demonstrate that his trial counsel rendered ineffective assistance. There is no basis for an evidentiary hearing because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."' 28 U.S.C. §2255(b).

I must also consider whether to grant Briseno a certificate of appealability. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2255 PROCEEDINGS 11(a). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To obtain a certificate of appealability, Briseno must show that reasonable jurists could debate whether his petition should have been resolved differently. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Briseno has made no such showing. A certificate of appealability will be denied.

ACCORDINGLY:

Defendant Juan Briseno's Motion to Vacate, Set Aside or Correct His Sentence Pursuant to 28 U.S.C. §2255 is DENIED.

The Clerk shall enter judgment denying the §2255 motion both in Cause No. 2:18CV74 and Cause No. 2:11CR77.

A certificate of appealability is DENIED.

SO ORDERED.

ENTERED:  October 1, 2019.

                                         /s/ Philip P. Simon
                                         PHILIP P. SIMON, JUDGE
                                         UNITED STATES DISTRICT COURT